IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ADAM STEVEN ANDERSON,

          Plaintiff,

          v.

JEREMY FIFER; PATRICK UTTER;
JASON MOORE; CHRIS BEDSAUL,
sued in their individual capacity, and
STEVE FRENCH; DAN BUCKWALD;
JOHN BATTLE; MARIA
VALDENEGRO; VICTOR
RICHENSTEIN; JANE DOE #1, sued
in their individual and official capacities,

          Defendants.
_____

Case No. 6:16-cv-02044-MC

OPINION AND ORDER

MCSHANE, Judge:

      Plaintiff Adam Anderson brings a civil rights claim against Defendants under 42 U.S.C. §
1983. Pl.'s First Am. Compl. ("FAC"), ECF No. 100. Plaintiff's claims are based on instances of
alleged misconduct that occurred while he was incarcerated as a pretrial detainee at Lane County
Adult Correctional Facility ("LCACF") in Eugene, Oregon. FAC 1. Defendants move for
summary judgment in three groups: (1) John Battle and Maria Valdenegro; (2) Victor
Richenstein; and (3) Jeremy Fifer, Patrick Utter, Jason Moore, Chris Bedsaul, Steve French, and
Dan Buckwald. ECF Nos. 23, 57, 116. Because a reasonable jury could only find in favor of
Plaintiff on one of his claims, Mr. Battle, Ms. Valdenegro, and Dr. Richenstein's Motions (ECF

1 – OPINION AND ORDER

Nos. 23 and 57) are GRANTED and the remaining Defendants' Motion (ECF No. 116) is GRANTED in part and DENIED in part.

## BACKGROUND[1]

Plaintiff was incarcerated as a pretrial detainee at LCACF for nine months. FAC 1. Plaintiff alleges that various jail medical staff, deputies, and authorities violated his constitutional rights from February 12, 2016 to July 15, 2016. Pl.'s Resp. 5–7, ECF No. 148. Mr. Battle, Ms. Valdenegro, and Brittany Cuelho[2] are nurses at LCACF. Battle Decl. ¶¶ 2–3, ECF No. 24; Valdenegro Decl. ¶ 2, ECF No. 25; Defs.' Answer ¶ 1, ECF No. 110. Dr. Richenstein is a psychiatrist who works as an independent contractor providing mental health services to LCACF. Richenstein Decl. ¶ 2, ECF No. 58. Mr. Fifer, Mr. Utter, Mr. Moore, Mr. Bedsaul, Mr. French, and Mr. Buckwald are LCACF officials. *See* Defs.' Mot. 7, ECF No. 116. Plaintiff filed a Complaint *pro se* on October 24, 2016 and a First Amended Complaint with the assistance of counsel on May 11, 2018. ECF Nos. 1 and 100.

## STANDARDS

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v.*

[1] I view the facts in the light most favorable to Plaintiff, the non-moving party.
[2] To the extent that Plaintiff's claims concern Brittany Cuelho, Ms. Cuehlo joins in Mr. Battle, Ms. Valdenegro, and Dr. Richenstein's filings at ECF Nos. 23, 55, and 57. Supp. Reply 5, ECF No. 112.

*Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

The Court addresses each Motion in the order Defendants filed them.

## I. Mr. Battle and Ms. Valdenegro

Plaintiff asserts Eighth Amendment violations, negligence, medical malpractice, assault, and battery claims against Mr. Battle and Ms. Valdenegro. Pl.'s Compl. ¶¶ 91, 260–61, 311, 322, 359, 366, 375–76, 381–82.[3] Plaintiff alleges that: (1) Mr. Battle failed to properly assess Plaintiff's injuries and only examined him by looking through the cell door on July 5, 2016; (2) Mr. Battle and Ms. Valdenegro refused to properly assess Plaintiff following his complaints of malnutrition; and (3) Ms. Valdenegro forcibly injected him with sedatives on July 4, 2016 against his will and without a court order. Pl.'s Compl. ¶¶ 91, 260–61, 311, 322, 359, 366.

## A. Eight Amendment

Deliberate indifference to an inmate's "serious medical need" constitutes a violation of the inmate's Eighth Amendment right to be free from cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To prevail on a deliberate indifference claim, an inmate must show that: (1) she had a "serious medical need;" (2) the prison official was deliberately indifferent to that need; and (3) this indifference caused her harm. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citations omitted). A serious medical need exists where "failure to treat

---

[3] Mr. Battle and Ms. Valdenegro filed their Motion in response to Plaintiff's initial Complaint. *See* Defs.' Mot., ECF No. 23.

3 – OPINION AND ORDER

[the] prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* (citation omitted).

An official is deliberately indifferent to an inmate's serious medical need if she "knows of and disregards" a substantial risk to the inmate's "health and safety." *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1187–88 (9th Cir. 2002) (quotations and citation omitted), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). This is a subjective standard, requiring not only that the official be aware of the facts from which one could infer a substantial risk, but also that she actually draw that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Mere negligence in "diagnosing or treating a medical condition" does not violate an inmate's rights. *Estelle*, 429 U.S. at 106. Instead, an inmate must show that the denial, delay, or intentional interference with medical care was taken in conscious disregard of an excessive risk to her health or safety. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (quotations and citation omitted). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842.

Plaintiff alleges that Mr. Battle exhibited deliberate indifference to his serious medical needs by only examining him through the cell door, failing to address his malnutrition complaints, and failing to order an x-ray following an incident on July 4, 2016. Pl.'s Compl. ¶¶ 91, 260–61, 311.

Mr. Battle stated that he was not always allowed to enter Plaintiff's cell due to Plaintiff's violent behavior. Battle Decl. ¶¶ 7, 9, ECF No. 24. Plaintiff admitted that when Mr. Battle visited Plaintiff's cell to evaluate him, the deputies refused him. Eichner Decl. Ex. 1, at 7–8, ECF No. 115. Plaintiff complained that he had lost forty pounds in segregation due to malnutrition. Battle

Decl. ¶ 10. Mr. Battle ordered a weight check, which revealed that Plaintiff had gained six pounds since his last weigh-in. *Id.* On May 19, 2016, Plaintiff complained of blood in his stool. *Id.* at ¶ 11. Mr. Battle determined no treatments were necessary because there was no observable blood in Plaintiff's stool. Defs.' Mot. 4, ECF No. 23. On July 4, 2016, Plaintiff self-injured his wrist and Mr. Battle examined the wound through the window in Plaintiff's cell door several times and saw no bleeding or infection. Defs.' Mot. 5, ECF No. 23; Battle Decl. ¶ 12. The wound healed well. *Id.*

On July 5, 2016, Plaintiff said he suffered broken ribs during an altercation with jail deputies. Battle Decl. ¶ 13. Mr. Battle saw no signs of respiratory distress or pain behavior— Plaintiff moved freely without the guarding behavior characteristic of rib fractures—and determined than an x-ray was unwarranted. *Id.* Plaintiff acknowledged that an x-ray would not change his treatment plan but said he wanted to know if his ribs were broken in case of future litigation. *Id.* On July 6, 2016, Plaintiff again complained of broken ribs and blood in his stool in addition to a ruptured spleen and kidney. *Id.* at ¶ 14. Mr. Battle observed that Plaintiff appeared healthy and in no pain or distress. *Id.* His stool had no gross blood. *Id.* Mr. Battle ordered a fecal occult blood test and urinalysis and both tested negative for blood. *Id.* Additionally, medical staff acknowledged Plaintiff's bloody stool complaints, told him to update security if it continued, and said they would document any additional blood. Anderson Decl. Ex. 5, ECF No. 53.

Mr. Battle acknowledged Plaintiff's medical complaints and examined Plaintiff from a safe distance on numerous occasions. Mr. Battle ordered certain tests and reasonably determined that others were unnecessary. "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107. Even if Mr. Battle's

medical decisions were negligent, Plaintiff has failed to show how Mr. Battle demonstrated a deliberate indifference to Plaintiff's serious medical needs.

Plaintiff also alleges that Ms. Valdenegro forcibly injected him with sedatives July 4, 2016 against his will and without a court order. Pl.'s Compl. ¶¶ 322, 359, 366. Pretrial detainees have a constitutional liberty interest in avoiding unwanted medication. *Bee v. Greaves*, 744 F.2d 1387, 1394 (10th Cir. 1984). This interest is not absolute and must be weighed against competing state interests. *Id.* State interests may outweigh an inmate's liberty interest "only if he is found to be (1) mentally ill and (2) gravely disabled or dangerous." *Washington v. Harper*, 494 U.S. 210, 221 (1990). The due process clause allows the State to treat an inmate who has serious mental illness with antipsychotic drugs against his will if he is a danger to himself or others and the treatment is in his medical interest. *United States v. Loughner*, 672 F.3d 731, 746 (9th Cir. 2012) (quotations and citation omitted).

> Determining that an emergency exists sufficient to warrant involuntary medication with [antipsychotic drugs] requires a professional judgment-call . . . [a]ny decision to administer antipsychotic drugs forcibly must be the product of professional judgment by appropriate medical authorities, applying accepted medical standards. It requires an evaluation in each case of all the relevant circumstances, including the nature and gravity of the safety threat, the characteristics of the individual involved, and the likely effects of particular drugs.

*Bee*, 744 F.2d at 1395–96.

Here, Ms. Valdenegro received a report on July 4, 2016 at 2:00 or 3:00 p.m. that Plaintiff was chewing on his wrist. Valdenegro Decl. ¶ 6, ECF No. 25. Ms. Valdenegro went to Plaintiff's cell with Mental Health Services. *Id.* Plaintiff said he was trying to remove his hand and exhibited "highly unusual" behavior. *Id.* Ms. Valdenegro left with a plan to follow up as needed. *Id.* At approximately 4:00 p.m., Ms. Valdenegro received a report that Plaintiff was an imminent danger to himself and was still chewing on his wrist, pulling at what appeared to be a tendon. *Id.*

at ¶ 7. Ms. Valdengro reported Plaintiff's behavior to Psychiatric Services, who told her to inject

Plaintiff with a sedative. *Id.*[4] At approximately 5:00 p.m., Ms. Valdenegro checked on Plaintiff.

*Id.* There was an open wound on Plaintiff's wrist with no bleeding. *Id.* Staff monitored Plaintiff

and gave him antibiotics. *Id.* Ms. Valdenegro said she believed the medications were necessary

to prevent Plaintiff from further harming himself. *Id.* at ¶ 8. Plaintiff testified that he did not

recall whether he continued chewing on his wrist on July 4 but that if he was it would be a

medical emergency. Eichner Decl. Ex. 1, at 2–3. Plaintiff also denied that all of his suicide

attempts at LCACF were false and agreed that medical providers should take suicide threats and

attempts seriously. *Id.* at 5.

Given Plaintiff's history of self-harm and refusal of prescribed oral medications, no

reasonable juror could conclude that Ms. Valdenegro violated Plaintiff's Eight Amendment

rights by injecting him.

## B. Medical Malpractice and Negligence

Plaintiff's medical malpractice and negligence claims are intertwined. "In most charges

of negligence against professional persons, expert testimony is required to establish what the

reasonable practice is in the community." *Getchell v. Mansfield,* 260 Or. 174, 179 (1971). Expert

medical testimony is required in most instances where materiality is at issue. *Id.* at 181. Here,

Plaintiff has provided no expert testimony to support his medical malpractice claim. Mr. Battle

and Ms. Valdenegro's declarations are the only expert testimony before the Court.

"Uncontroverted expert testimony is sufficient to indicate that no factual issue exists."

*Tiedemann v. Radiation Therapy Consultants, P.C.*, 299 Or. 238, 244 (1985). Accordingly, the

---

[4] Plaintiff had a history of refusing prescribed oral medications. Valdenegro Decl. Ex. B, ECF No. 25.

Court grants summary judgment on Plaintiff's medical malpractice claim in favor of Mr. Battle and Ms. Valdenegro.

## C. Assault and Battery

"An assault and battery involves more than an intentional act. There must be the intent to injure." *Cook v. Kinzua Pine Mills Co.*, 207 Or. 34, 48 (1956). Plaintiff has offered no evidence that Ms. Valdenegro intended to injure him. Ms. Valdenegro believed that the injection was necessary to protect Plaintiff from further self-harm and did not intend to harm him. Valdenegro Decl. ¶ 8.

Because Plaintiff has failed to raise a genuine dispute of material fact as to the above claims, the Court grants Mr. Battle and Ms. Valdenegro's Motion for Summary Judgment.

## II. Dr. Richenstein

Plaintiff asserts Eight Amendment violations, medical malpractice, and negligence claims against Dr. Richenstein. Pl.'s Compl. ¶¶ 313–14, 323.[5] Plaintiff bases these claims on Dr. Richenstein's authorization of forced medication on June 25 and July 4, 2016. *Id.*

Dr. Richenstein stated that nursing staff called him on June 25, 2016 to inform him that Plaintiff had become aggressive and broken a number of items. Richenstein Decl. ¶ 7, ECF No. 58. Plaintiff had held a large piece of metal to his neck and wrist, made suicide threats, and threatened others' lives. *Id.* Dr. Richenstein ordered the staff to administer medication and to repeat it if Plaintiff's behavior did not improve. *Id.*

Dr. Richenstein evaluated Plaintiff on July 4, 2016 due to reports that Plaintiff had been biting his own wrist. *Id.* at ¶ 8. Plaintiff was very angry, aggressive, and violent. *Id.* Plaintiff was

---

[5] Dr. Richenstein filed his Motion in response to Plaintiff's initial Complaint. *See* Def.'s Mot., ECF No. 57.

"biting his wrist and spitting out blood from the wound." *Id.* The day before, Plaintiff had also hurt his forehead by banging his head against his cell walls or door. *Id.* Plaintiff refused to cooperate with Dr. Richenstein and could or would not engage in "meaningful psychological treatment." *Id.* Dr. Richenstein diagnosed Plaintiff as having a manic episode and ordered an injection on an as-needed basis. *Id.* Approximately one hour later, Ms. Valdenegro told Dr. Richenstein that Plaintiff had resumed chewing on his wrist and appeared to have accessed a tendon. *Id.* at ¶ 9. Dr. Richenstein ordered Ms. Valdenegro to give Plaintiff another injection. *Id.* Dr. Richenstein evaluated Plaintiff again on July 5. *Id.* at 10. Plaintiff had continued suicidal behaviors and attempted to hang himself. *Id.* Dr. Richenstein continued the as-needed order. *Id.*

For the same reasons as above, Plaintiff has failed to provide evidence and expert testimony sufficient to establish a genuine dispute of material fact. The Court grants Dr. Richenstein's Motion for Summary Judgment as to all claims against him.

## III. Mr. Fifer, Mr. Utter, Mr. Moore, Mr. Bedsaul, Mr. French, and Mr. Buckwald

Plaintiff alleges that the remaining Defendants impermissibly strip searched him, subjected him to unconstitutional conditions of confinement, used excessive force, and denied him proper nutrition, access to courts, medical treatment, and exercise. FAC ¶¶ 5–272.[6] Each claim is addressed in turn.

## A. Strip Searches

Plaintiff alleges that Mr. Fifer excessively and impermissibly strip searched him. FAC ¶¶ 5–33, 153–55, 167–69; Pl.'s Resp. 26, ECF No. 148. The Fourth Amendment prohibits

---

[6] These Defendants filed their Motion in response to Plaintiff's First Amended Complaint. *See* Def.'s Mot., ECF No. 116.

unreasonable searches. *Bell v. Wolfish*, 441 U.S. 520, 558 (1979) (citing *Carroll v. United States*, 267 U.S. 132, 147 (1925)).

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Bell*, 441 U.S. at 559. A determination of whether restrictions and practices constitute unconstitutional punishment requires an evaluation of whether they are "rationally related to a legitimate nonpunitive governmental purpose and whether they appear excessive in relation to that purpose." *Id.* at 561. Four general principles guide this analysis: (1) even convicted prisoners have some constitutional protections; (2) prisoners' constitutional rights are subject to certain restrictions and limitations; (3) "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees;" and (4) prison administrators are entitled to wide-ranging deference in their "adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 545–47 (internal citations omitted). Additionally, the Eighth Amendment can provide "a remedy for calculated harassment unrelated to prison needs." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984).

Plaintiff alleges that Defendants strip searched him two to six times per day between January 29 and September 9, 2016 in retaliation to his reports. FAC ¶¶ 153–55. Plaintiff "posed an unusual risk of harm to inmates, staff and himself" and "caused unusually high amounts of property damage at the jail." French Decl. ¶ 3, ECF No. 117. Plaintiff stabbed another inmate using an improvised weapon on January 29. *Id.* at ¶ 4. Plaintiff said he was strip searched

10 – OPINION AND ORDER

regularly following his first assault. Defs.' Mot. Ex. 1, at 4–5, ECF No. 116. Plaintiff stabbed a

second inmate on April 12. French Decl. ¶ 5. Plaintiff admitted that some officers' failure to

follow Mr. French's search protocol allowed Plaintiff to conceal the weapon he used. Defs.' Mot.

Ex. 1, at 6–7, ECF No. 116. As of the second attack, Plaintiff had not been searched in almost a

week. *Id.* at 7. Plaintiff said that the frequency of strip searches varied following his second

assault. *Id.* at 5. Plaintiff admitted that the strip searches may have been warranted when he was

in cells without video monitoring. *Id.*

Given Plaintiff's history, the frequency of these searches was reasonable and rationally

related to LCACF's legitimate interest in maintaining security.

Plaintiff alleges that Mr. Fifer strip searched him twice on February 12, 2016—once

before transporting him to new housing and once in his new cell. FAC ¶¶ 5–15. During the

second search, Mr. Fifer laughed when Plaintiff completed a "squat and cough" procedure, told

Plaintiff to do it again, then smiled at Plaintiff and ordered him to show the other deputies his

rectum. FAC ¶¶ 10–12. When Plaintiff refused, Mr. Fifer put his hand on his taser, leaned

forward aggressively, and repeated the command twice more. FAC ¶ 13–14. Plaintiff said he felt

sexually abused and Mr. Fifer winked at him then laughed and made derogatory comments as he

left the cell. FAC ¶ 15. When Plaintiff told Mr. Fifer that he intended to file a grievance, Mr.

Fifer made a lewd hand gesture. FAC ¶¶ 17–18. Plaintiff also alleges that Mr. French and Mr.

Buckwald ignored Plaintiff's allegations of sexual misconduct and allowed it to continue. FAC

¶¶ 168–69.

As explained above, increased strip searches were reasonable given Plaintiff's history of

violence and improvising weapons. Mr. Fifer's alleged conduct during this particular search,

although distasteful, does not rise to the level of a constitutional violation.

11 – OPINION AND ORDER

Plaintiff next alleges that Mr. French, Mr. Buckwald, and Mr. Moore deprived Plaintiff of means to grieve. FAC ¶¶ 19–32. "The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities and as well as a right of meaningful access to the courts." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015) (citations omitted). "Retaliation against prisoners for their exercise of this right is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'" *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). A viable claim for First Amendment retaliation claim includes:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted).

Here, Plaintiff fails to show adverse action or that his protected conduct was the "motivating factor" behind Defendants' actions. *See Broadheim*, 584 F.3d at 1271. Plaintiff alleges that he was restricted from using paper and pencils and accessing the phone to prevent him from complaining about Mr. Fifer. FAC ¶¶ 19–20. Plaintiff reported Mr. Fifer on April 2, 2016. FAC ¶ 21. A deputy told Plaintiff he had to submit a written request to the shift supervisor explaining why a grievance was needed before filing one. FAC ¶ 22. Plaintiff submitted a written request on April 2, stating that he felt sexually assaulted by Mr. Fifer and wanted a no contact order and investigation. FAC ¶ 23. Mr. Fifer intercepted the request and said, "[Y]ou think you're fucking cute, huh?" and that he had seen the request. FAC ¶ 25. Mr. Fifer said Plaintiff was "a fucking liar" and said "no one will believe some inmate." FAC ¶ 26. Mr. Fifer pulled his taser halfway out of the holster and asked Plaintiff if he was sure he wanted to submit the request. FAC ¶ 27. Plaintiff felt extreme fear and said, "[M]aybe it was all a misunderstanding."

12 – OPINION AND ORDER

*Id.* Mr. Fifer laughed and said, "[T]hat's what it must've been." *Id.* Later that evening, a deputy asked Plaintiff if he still wanted to submit the request and Plaintiff said yes. FAC ¶ 28. On April 3, Plaintiff met with a sergeant and several deputies. FAC ¶ 29. The sergeant told Plaintiff that he had made "serious allegations" and that he "shouldn't make things harder for himself than they had to be." FAC ¶ 31. Mr. Fifer continued to make lewd gestures toward Plaintiff, including winking and blowing kisses. FAC ¶ 32. Plaintiff ultimately filed a grievance against Mr. Fifer on July 21, 2016. Defs.' Mot. Ex. 3, ECF No 116. Three officials reviewed and responded to the grievance. *Id.*

No reasonable juror could find that Defendants denied Plaintiff of means to grieve.

Finally, Plaintiff alleges that on July 15, 2016, Mr. Moore, Mr. Bedsaul, Mr. Fifer, and other female and male staff members asked Plaintiff if he wanted to shower and restrained him while naked, denying him use of his suicide smock. FAC ¶¶ 156–57. The deputies walked Plaintiff down a hallway lined with ten to twenty male and female staff members who made lewd comments and laughed as he stood there for five to ten minutes while Mr. Bedsaul and Mr. Moore looked for clothing. FAC ¶¶ 158–59. Plaintiff believes this was punishment for his alleged spitting on Mr. Fifer on July 4, 2016. FAC ¶ 160. Plaintiff complained to the sergeant, who told him that LCACF was not obligated to clothe Plaintiff. FAC ¶ 162. Plaintiff filed a grievance and was denied a Prison Rape Elimination Act complaint because the misconduct did not rise to that level. FAC ¶ 164.

The Ninth Circuit has long recognized that "[t]he desire to shield one's unclothed figure from [the] view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." *Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135, 1141 (9th Cir. 2011) (quoting *York v. Story,* 324 F.2d 450, 455 (9th Cir. 1963)). Here, no

13 – OPINION AND ORDER

female deputies were present. French Decl. ¶ 19. Rather, Plaintiff heard a female deputy

laughing at something unrelated from a nearby tier, and she could not even see Plaintiff from her

tier. *Id.*; *see* Nightingale Decl. ¶ 2, ECF No. 118; French Decl. ¶ 19. The audio recording of the

incident reveals brief, distant laughter at three intervals and no comments regarding Plaintiff. *See*

Corrected French Decl. Ex. G at 5:32, 7:11, and 9:14, ECF No. 152.[7]

Plaintiff has failed to raise a genuine dispute of material fact regarding the frequency and

conditions of his strip searches and related grievances.

**B. Conditions of Confinement**

Plaintiff alleges that he was subject to unconstitutional conditions of confinement. FAC

¶¶ 35, 37, 58–62, 73–75, 170, 174. The standard of deliberate indifference applies to Fourteenth

Amendment claims alleging unconstitutional conditions of confinement. *Helling v. McKinney*,

509 U.S. 25, 30 (1993) ("where the claim alleges inhumane conditions of confinement or failure

to attend to a prisoner's medical needs, the standard for that state of mind is the 'deliberate

indifference' standard"); *Anderson v. Cty. of Kern*, 45 F.3d 1310, 1313, *as amended on denial of*

*reh'g*, 75 F.3d 448 (9th Cir. 1995). Deliberate indifference is shown when a prison official knew

that a detainee faced a "substantial risk of serious harm" and failed to take reasonable measures

to abate the risk. *Farmer*, 511 U.S. at 847; *Toguchi v. Chung*, 391 F.3d 1051, 1059 (9th Cir.

2004) (negligence is insufficient to state a claim for deliberate indifference).

Here, Plaintiff alleges that Defendants placed him in cells with blood and feces on the

floor and walls and denied him access to cleaning supplies. FAC ¶¶ 35, 37, 58–62. The blood,

feces, and urine in Plaintiff's cell came from other inmates. Corrected Suppl. Dep. Tr. Anderson

---

[7] Exhibit G is not attached to the Corrected French Declaration, but counsel for Defendants submitted a hard copy to the Court under seal.

20, ECF No. 153. Plaintiff contributed to the blood and saliva on the floor of his cell. *Id.* at 21–22. Sometimes Plaintiff was in clean cells and other times uninhabitable cells. *Id.* at 28. He was usually in dirty cells for two to four days. *Id.* at 27–28. When Plaintiff behaved poorly to elicit a response, the sergeant would order the deputies to move Plaintiff. *Id.* at 29.

Plaintiff next alleges that he was "starved and abused" in segregation. FAC ¶ 73. When Plaintiff's sixty-day sanction ended on June 25, 2016, Mr. French, Mr. Buckwald, and Mr. Moore kept Plaintiff in segregation, triggering a post-traumatic stress disorder episode. FAC ¶ 73–75. Plaintiff told the deputies he could not sleep, eat, or stay in isolation. FAC ¶ 74. He was in segregation for seventy-five days consecutively with only a blanket and no outside recreation, sunlight, or visitors. FAC ¶ 75. On another occasion, he was in isolation for six months due to a "minimal corrections concern," which affected his mental health FAC ¶¶ 170, 174.

In order to establish a claim for cruel and unusual punishment under the Eighth Amendment, a plaintiff must show that the punishment included "elements of severity, arbitrary infliction, unacceptable in terms of contemporary standards, or gross disproportion." *Ingraham v. Wright,* 430 U.S. 651, 658 (1977). Or. Admin. R. § 291–105–0021(3) provides that:

> An inmate charged with committing a rule violation may be placed in temporary disciplinary segregation status pending resolution of the charge. This action will be taken when the functional unit manager or the officer-in-charge determines that the alleged rule violation charged is of such seriousness that the good order and security of the facility requires immediate removal of the inmate from the general population.

The due process requirements for an inmate at a disciplinary hearing are as follows: (1) an opportunity to appear before the decision making body; (2) staff representation if she wishes; (3) written notice of the charge against her in advance of the hearing; (4) conditional opportunity to present witnesses and documentary evidence; and (5) a written statement of the evidence

relied upon and the reasons for the sanction taken. *Wolff v. McDonnell*, 418 U.S. 539, 563–73 (1979).

Here, Defendants put Plaintiff in segregation more often than other inmates due to his behavior. French Decl. ¶ 20. Plaintiff stabbed inmates with improvised weapons on two occasions, damaged over two thousand dollars' worth of property, and spit in Mr. Fifer's face and eye. *Id.* at ¶¶ 13, 20. He tried to grab a deputy's arm through the "pie flap" to his cell and took a fighting stance toward another deputy. *Id.* at ¶ 12. He also made numerous violent threats towards staff and threats of additional property damage. *Id.* at ¶ 12, 14. LCACF could not risk putting Plaintiff in direct proximity to other inmates. *Id.* at ¶ 6. Moreover, Plaintiff does not allege that he was denied procedural due process or that he should not have been put on segregation status.

No reasonable jury could find that Plaintiff's cell conditions or time spent in segregation violated his Eighth or Fourteenth Amendment rights.

Finally, Plaintiff alleges that Defendants did not allow him to decontaminate after they pepper sprayed him on June 25, 2016. FAC ¶¶ 79–87. The Ninth Circuit has long recognized that the failure to properly decontaminate a prisoner exposed to pepper spray can support a deliberate indifference claim. *Clement v. Gomez*, 298 F.3d 898, 904–06 (9th Cir. 2002). In *Clemen*t, the Ninth Circuit affirmed a lower court's denial of summary judgment to prison officials who had withheld showers and other medical care from inmates exposed to the second-hand effects of pepper spray. *Id.* at 902, 905. The plaintiffs in that case were exposed to fumes from pepper spray deployed against inmates in neighboring cells and suffered "stinging sensations in the[ir] eyes and on the[ir] skin," as well as "asthma attacks [and] difficulty breathing." *Id.* at 902. The

plaintiffs had access to soap and running water, but prison officials denied them showers and other medical attention for four hours. *Id.*

The court found that there was a genuine dispute of fact as to whether the "defendants were subjectively aware of the risk of serious injury" when they denied shower access. *Id.* at 905. The court reasoned, in particular, that a jury could infer the officials' requisite knowledge based on declarations in which the plaintiffs alleged that: (1) they had requested showers and other medical care; (2) they were visibly suffering the effects of exposure; and (3) several prison officials had themselves taken measures to protect their eyes and lungs from the fumes. *Id.* "While a resolution of the factual issues may well relieve the prison officials of any liability in this case," the court opined, "a jury might conclude that the officers were deliberately indifferent to such needs during the four-hour period." *Id.* at 906.

Here, a corrections officer sprayed Plaintiff from groin to face with pepper spray. FAC ¶ 77. Plaintiff ran to the shower area. FAC ¶ 78. When Plaintiff got to the shower, the water had been turned off and he only had access to a wet rag. Chavez Decl. Ex. 1, at 52–53, ECF No. 149. Plaintiff returned to his cell and Mr. Fifer fired 30 rounds of pepper balls at him. FAC ¶¶ 78–79. Staff then injected Plaintiff with medication and left him covered in pepper spray for over forty-eight hours. FAC ¶¶ 85–87. Plaintiff was not allowed to shower until July 3. French Decl. ¶ 12.

Plaintiff had running water in his cell the morning of June 26. French Decl. ¶ 7; Corrected French Decl. Ex. D at 5:33:56.[8] Even so, Defendants denied Plaintiff a shower for eight days. Defendants attempt to justify this denial by citing various incidents starting on June 27. Defs.' Mot. 17, ECF No. 116; *see* French Decl. ¶ 12. Plaintiff's behavior from June 27

---

[8] See timestamp in the top right corner of the video exhibit.

through July 3 does not explain Defendants' failure to allow Plaintiff to decontaminate between June 25 and June 27, especially given the fact that he received medication. *See* Defs.' Mot. 17, ECF No. 116. A reasonable jury could find that the officers were deliberately indifferent to Plaintiff's needs.

Defendants' Motion for Summary Judgment is granted as to Plaintiff's claims regarding cell conditions and segregation and denied as to Plaintiff's claim regarding decontamination.

## C. Excessive Force

Plaintiff alleges that Mr. Fifer raped him and shot pepper balls at him after he surrendered, and that Mr. Moore, Dr. Richenstein, and Ms. Cuelho used excessive force when injecting him. FAC ¶¶ 3–18, 78–87, 177–85.

A prison official's use of "excessive force" against a prisoner violates the inmate's Eighth Amendment right to be free from "cruel and unusual punishment." *Clement*, 298 F.3d at 903. To satisfy the excessive force threshold, a prison official must apply the force "maliciously and sadistically for the very purpose of causing harm." *Whiteley v. Albers*, 475 U.S. 312, 320–21 (1986). This is a subjective standard requiring that an official use force with "intent to harm" and not merely in a "good faith effort to maintain or restore discipline." *Robins v. Meecham*, 60 F.3d 1436, 1440 (9th Cir. 1995); *Whiteley*, 475 U.S. at 320. In deducing the purpose for which an official used force, courts consider "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible official[ ]; and (5) any efforts made to temper the severity of [the] response." *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). Here, Plaintiff testified that Mr. Fifer raped him. Defs.' Mot. Ex. 1, at 8, ECF No. 116. Yet Plaintiff admitted that Mr. Fifer did not physically contact him. *Id.* at 10. Rather, Mr. Fifer strip searched

18 – OPINION AND ORDER

Plaintiff, shined a flashlight at his rectum in front of other guards, made obscene gestures, and verbally harassed him. *Id.* at 8–9.[9] This does not constitute unwanted sexual contact.

Plaintiff also alleges that on June 25, 2016, Mr. Fifer hosed Plaintiff with pepper spray then fired 30 rounds of pepper balls at Plaintiff after he said he would go back to his cell. FAC ¶¶ 77–79. After he visited the nurse's station, deputies slammed him onto his concrete bunk face down and pinned him down for five to ten minutes. FAC ¶¶ 82–83. Mr. Moore then ordered Ms. Cuelho to inject Plaintiff with medication. FAC ¶ 84. Before this incident, Plaintiff had damaged jail property and threatened to kill himself with an improvised weapon. French Decl. ¶ 7; Corrected French Decl. Ex. B at 19:47:15. He also used lotion to make himself difficult to grab. French Decl. ¶ 7. It took Plaintiff forty-five minutes to surrender, and no one shot pepper balls at him after he surrendered. *See* Corrected French Decl. ¶ 8; *id.* Exs. A at 19:15:15, B at 20:00:38, and C at 20:02:38–20:05:34.[10]

This does not constitute excessive force. For the reasons explained in the previous sections of this Opinion, no reasonable jury could find that Defendants applied excessive force in administering medication either.

**D. Food as Punishment**

Plaintiff alleges that Mr. French, Mr. Buckwald, and Mr. Moore deprived him of proper nutrition as punishment. FAC ¶¶ 42–57. "The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (citation omitted). Even food

---

[9] Plaintiff also testified that Mr. Fifer placed a taser to Plaintiff's rectum area for five seconds. Defs.' Mot. Ex. 1, at 11, ECF No. 116. This allegation does not appear in Plaintiff's FAC and, therefore, will not be discussed here.
[10] Exhibits A, B, and C are not attached to the Corrected French Declaration, but counsel for Defendants submitted hard copies to the Court under seal.

that "occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Id.* (quotations and citation omitted).

When Plaintiff was in segregation, he received two bologna sandwiches with fruit for each breakfast and lunch and either two bologna sandwiches or one bologna sandwich and one peanut butter and jelly sandwich with vegetables for dinner. French Decl. ¶ 20. Defendants' independent expert nutritionist opined that either of the available dinners would sustain an average adult male's healthy weight if he had a sedentary lifestyle. *Id.* at ¶ 21; Defs.' Mot. Ex. H, at 1, ECF No. 116. No reasonable juror could conclude that Plaintiff's meals were constitutionally inadequate.

## E. Access to Courts

Plaintiff alleges that Mr. French, Mr. Moore, and Mr. Buckwald denied him access to the jail law library from April 12 to September 9, 2016, which prevented him from adequately assisting in his defense. FAC ¶¶ 63, 71. Plaintiff alleges that Plaintiff was only allowed ten sheets of paperwork in his cell at a time and was denied access to his legal documents. FAC ¶¶ 64, 66. Plaintiff also alleges that his attorneys were denied the right to visit Plaintiff and had to petition the Court, he was not allowed to meet with them privately, and he was barred from calling them. FAC ¶¶ 65, 67–68.

Inmates have a constitutional right to access the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977), *abrogated by Lewis v. Casey*, 518 U.S. 343 (1996). This right requires prison officials to help inmates prepare and file meaningful legal documents by providing them with "adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. A plaintiff alleging a violation of this right must show actual injury. *Lewis*, 518 U.S. at 349. "Actual injury [means] actual prejudice with respect to contemplated or existing litigation, such

20 – OPINION AND ORDER

as the inability to meet a filing deadline or to present a claim." *Hathaway v. Cote,* 622 Fed.App'x 701, 702 (9th Cir. 2015) (quotations and citation). An offer of court-appointed counsel satisfies "the Fifth Amendment obligation to provide meaningful access to the courts." *United States v. Wilson*, 690 F.2d 1267, 1272 (9th Cir. 1982).

Here, Plaintiff had counsel in the case against him for aggravated harassment against Mr. Fifer. Defs.' Mot. Ex. 1, at 17, ECF No. 116. Plaintiff testified that he met with his attorney privately on some occasions and that a deputy was present and logged their conversations on other occasions. *Id.* at 19. Plaintiff proffers no evidence to support his eavesdropping claim. Defendants argue that Plaintiff only sought access to the law library to research his criminal matter. Defs.' Mot. 21–22, ECF No. 116. Plaintiff testified that he also sought access concerning his conditions of confinement. Defs.' Mot. Ex. 1, at 17–18, ECF No. 116. Regardless, Plaintiff has failed to show that lack of access prejudiced his ability to bring conditions of confinement claims.

No reasonable jury could find that Defendants denied Plaintiff access to the courts.

## F. Medical Treatment

Plaintiff alleges that Mr. French, Mr. Moore, and Mr. Buckwald authorized deputies to take away his prescription eyeglasses multiple times from January 18 to September 9, 2016 in response to reports of his misconduct. FAC ¶ 145–52. As explained above, jail personnel violate a prisoner's Eighth Amendment rights if they are deliberately indifferent to the inmate's serious medical needs. *See Estelle,* 429 U.S. at 104–05.

Here, Plaintiff improvised the weapons he used to stab other inmates from a plastic toothbrush holder and a mop bucket handle. Defs.' Mot. Ex. 1, at 3–4, ECF No. 116. Plaintiff

admitted that deputies would confiscate his eyewear after instances of misconduct. FAC ¶ 149.

Mr. French explained that they took his eyeglasses away for safety and security purposes. *Id.*

No reasonable juror could find that Mr. French, Mr. Moore, or Mr. Buckwald acted

unreasonably or with deliberate indifference when they took Plaintiff's eyeglasses away.

## G. Denial of Exercise

Plaintiff alleges that Mr. French, Mr. Buckwald, and Mr. Moore violated his Eighth

Amendment rights by depriving him of outdoor exercise for long periods of time. FAC ¶ 172.

Exercise is "one of the basic human necessities protected by the Eighth Amendment." *LeMaire*,

12 F.3d at 1457. Additionally, the Ninth Circuit has determined that "long-term denial

of *outside* exercise is unconstitutional." *Id.* at 1458 (explaining that "in *Spain v. Procunier*, 600

F.2d 189 (9th Cir.1979), the court declared unconstitutional the deprivation of outdoor exercise

for inmates held longer than four years."). Generally, a lack of outdoor exercise for extended

periods of time "is a sufficiently serious deprivation and thus meets the requisite harm

necessary" to satisfy the objective test set forth in *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) *Id.*

at 1457.

Here, Plaintiff was in segregation several times more often than other inmates due to his

behavior. French Decl. ¶ 20. He stabbed two inmates with improves weapons, damaged property,

spit in Mr. Fifer's face and eye, became combative with other deputies, and made numerous

threats. *Id.* at ¶¶ 12, 13–14, 20. LCACF could not risk putting Plaintiff in direct proximity to

other inmates. *Id.* at ¶ 6. Defendants gave Plaintiff exercise shoes and the opportunity to exercise

inside his cell. *Id.* at ¶ 15. Furthermore, Plaintiff has failed to establish facts demonstrating that

he was denied outdoor exercise long-term.

Given Plaintiff's behavior, Defendants' attempts to allow Plaintiff to exercise inside his cell, and Plaintiff's failure to specify a timeframe, no reasonable jury could find that Defendants violated Plaintiff's constitutional right to exercise.

## H. Qualified Immunity

Defendants argue that Mr. Fifer, Mr. Utter, Mr. Moore, Mr. Bedsaul, Mr. French, and Mr. Buckwald are entitled to qualified immunity. Defs.' Mot. 30–39, ECF No. 116. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (citation and quotation marks omitted).

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority[.]'" It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that "every reasonable official" would know.

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018) (citations omitted). Further, the Supreme Court has repeatedly admonished lower courts that "the clearly established right must be defined with specificity." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam).

Plaintiff raises general objections to the doctrine of qualified immunity and argues that it is inapplicable to correctional doctors and medical staff. Pl.'s Resp. 9–11, ECF No. 148. The Court acknowledges Plaintiff's objections and efforts to preserve arguments for later adjudication. However, no controlling authority suggests that the doctrine does not apply to Defendants in this case.

Plaintiff next argues that these Defendants waived the qualified immunity defense by failing to raise the defense earlier and that because Plaintiff has proceeded "largely *pro se*" he could not have foreseen the defense. Pl.'s Resp. 9, ECF No. 148. Generally, a party must affirmatively state any affirmative defense in responding to a pleading. Fed. R. Civ. P. (c)(1). "[A]bsent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary judgment for the first time." *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984). Plaintiff fails to explain how he was prejudiced by Defendants' failure to raise the qualified immunity defense earlier. *See* Pl.'s Resp. 9, ECF No. 148. Moreover, Plaintiff has had representation from October 10, 2017 to May 6, 2019 and June 26, 2019 to present. *See* ECF Nos. 88, 124, 131. Plaintiff had representation as of the filing of his operative complaint on May 11, 2018 and the instant Motion on March 4, 2019. *See* ECF Nos. 100, 116.

Turning to the merits of the defense, Plaintiff argues that his claims should be tried before a jury. Pl.'s Resp. 11–32, ECF No. 148. Defendants are not entitled to qualified immunity regarding Plaintiff's failure to decontaminate claim. Any reasonable officer would know that denying Plaintiff a shower for eight days following two pepper spray applications violates clearly established law. Because a reasonable jury could find that Defendants violated this clearly established law, this claim should be tried before a jury.

As to Plaintiff's remaining claims, no reasonable jury could find that Defendants violated Plaintiff's constitutional rights, therefore the Court will not address qualified immunity as to those claims.

## I. State Law Claims

Plaintiff alleges various state claims based on the events described above, namely, battery, assault, and negligence. Pl.'s Resp. 5–7, ECF No. 148. Defendants urge the Court to

24 – OPINION AND ORDER

decline the exercise of supplemental jurisdiction over Plaintiff's state law claims. Federal courts are courts of limited jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Federal courts have supplemental jurisdiction over state law claims only when the plaintiff alleges a federal claim over which the court has original jurisdiction and the state law claims "are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). When the federal claims are dismissed before trial, it is wholly within the district court's discretion to dismiss the state claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *see also Schneider v. TRW, Inc.,* 938 F.2d 986, 993–94 (9th Cir. 1991); 28 U.S.C. § 1367(c)(3).

Here, the Court has not invested its judicial energies to such an extent that would justify retaining jurisdiction. *See Schneider,* 938 F.2d at 994; *Wren v. Sletten Const. Co.,* 654 F.2d 529, 536 (9th Cir. 1981). Nor is it apparent that judicial economy warrants retaining jurisdiction over this case. *See Schneider,* 938 F.2d at 994. In weighing issues of economy, convenience, fairness, and comity, the Court declines to retain supplemental jurisdiction over any remaining state law claims and they are dismissed without prejudice.

## **CONCLUSION**

Mr. Battle, Ms. Valdenegro, and Dr. Richenstein's Motions (ECF Nos. 23 and 57) are GRANTED and the remaining Defendants' Motion (ECF No. 116) is GRANTED in part and DENIED in part consistent with this Opinion. Any remaining state law claims are dismissed without prejudice.

25 – OPINION AND ORDER

IT IS SO ORDERED.


DATED this 3rd day of August, 2020.

_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge